## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL DEANDRADE, | : | Civil No. 1:23-CV-01035 |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| WARDEN BARRAZZA, | : | |
| | : | |
| Respondent. | : | Judge Jennifer P. Wilson |

### MEMORANDUM

Before the court is Daniel Deandrade's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241.  (Doc. 1.)  Petitioner is a federal inmate currently housed at the Federal Correctional Institution in Danbury, Connecticut ("FCI-Danbury").  His petition alleges a violation of due process in the course of a disciplinary proceeding that resulted in the loss of good conduct time credit.  (*Id.*)  For the following reasons, the court will deny the petition and close the case.

### BACKGROUND AND PROCEDURAL HISTORY

On May 22, 2022, at 2:19 p.m., Petitioner was issued an incident report alleging that earlier that day at 11:00 a.m., while Petitioner was housed at FCI-Allenwood, contraband was found in the pipe casing between cells 113 and 114.  (Doc. 6-1, p. 8.)[1]  The incident report No. 70206-054 states that the contraband

---

[1] For the ease of reference, the court utilizes the page numbers from the CM/ECF header.

could only be accessed from inside cell 113 "by removing the soap dish and toilet paper holder." (*Id*.)  It also states that cell 113 was occupied by Petitioner.  (*Id*.)

Petitioner was read his rights regarding the disciplinary process, stated he understood his rights, and stated that he did not wish to make a statement when asked if he would like to make a statement regarding this incident report.  (*Id*., p. 10.)  Petitioner was charged with possessing drugs/alcohol, destroying property over $100.00, and possessing an unauthorized item.  (*Id*., p. 8.)

Petitioner appeared before the Unit Disciplinary Committee ("UDC") on May 24, 2022.  (Doc. *Id*., p. 9.)  Petitioner stated that he did not wish to call any witnesses or provide any mitigating or extenuating evidence.  (*Id*., p. 10.)  Petitioner signed a notice of discipline hearing before the Discipline Hearing Officer ("DHO") and waived his right to a staff representative, to have a witness, and to present documentary evidence.  (*Id*., p. 11.)  He also signed a Rights at Discipline Hearing form.  (*Id*., p. 12.)

A hearing was held on June 8, 2022.  (Doc. 6-1, pp. 14–16.)  Petitioner did not have staff representation at the hearing or request any witnesses.  (*Id*., pp. 14–15.)  At the hearing, he stated "I've been in the cell for 90 days, it's not mine." (*Id*., p. 14.)  Petitioner was found to have violated code 113 for possessing drugs/alcohol.  (*Id*., 15.)  He was sanctioned with the loss of 41 days good conduct time, 90 days of disciplinary segregation, a forfeiture of one year non-vested good

conduct time, the loss of phone privileges for eight months, and a $500 fine.  (*Id.*, p. 16.)  Petitioner was provided a copy of the DHO's findings and advised of his appeal rights at the hearing on June 10, 2022.  (*Id.*)

It appears that Petitioner appealed the DHO's findings through the Central Office Administrate Remedy Appeal.  (Docs. 1-2, 1-3.)[2]

Petitioner filed the instant petition in June of 2023.  (Doc. 1.)  At the time the petition was filed, Petitioner was held at FCI-Allenwood in White Deer, Pennsylvania.  (Doc. 1, p. 1.)  Petitioner alleges that a violation of due process occurred by (1) the DHO failing to fully investigate the incident by not taking the intoxicants to an outside lab for analysis, not reviewing CCTV, and not physically investigating cell 113; (2) the DHO's failure to introduce exculpatory evidence in the record preventing him from using it in his defense; (3) the DHO's inability to be impartial due to his wife and daughter working at the facility; and (4) the DHO failed to provide Petitioner the lab reports.  (Docs. 1, 6.)

On June 29, 2023, the court issued an order serving Respondent with a copy of the petition.  (Doc. 4.)  On July 20, 2023, Respondent filed a response.  (Doc. 6.)  On August 8, 2023, Petitioner filed a traverse.  (Doc. 9.)  On March 8, 2024, the court received and docketed a notice of change of address informing the court he

---

[2] Respondent does not set forth the affirmative defense of administrative exhaustion.  (Doc. 6.) Therefore, the court will not address the administrative appeal of the DHO report further.

had been transferred to FCI-Danbury.  (Doc. 10.)  On March 19, 2024, the court received and docketed Petitioner's response to Respondents' motion.  (Doc. 11.)

## VENUE

A § 2241 petition must be filed in the district where the petitioner is in custody.  *See Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 494–95 (1973) ("The writ of habeas corpus does not act upon the person who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody.")  While Petitioner is currently being held at a facility in Connecticut, at the time the petition was filed, Petitioner was housed at FCI-Allenwood in Union County, Pennsylvania, which is located in this district. *See* 28 U.S.C. § 118(b). The relevant consideration is the district of confinement at the time the petition was filed. *See Barden v. Keohane*, 921 F.2d 476, 477 n.1 (3d Cir. 1990). Therefore, this court is the proper venue for the action.

## DISCUSSION

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law.  *Torres v. Fauver*, 292 F.3d 141 (3d Cir. 2002).  It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply."  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake

4

in disciplinary proceedings in which an inmate loses good conduct time. *Id*. Since Petitioner's sanctions did include the loss of good conduct time, Petitioner has identified a liberty interest in this matter.

In *Wolff*, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. *Wolff*, 418 U.S. at 563-67.

The Bureau of Prisons has enacted specific procedures for disciplinary proceedings. 28 C.F.R. § 541.1, *et seq.* Under these procedures, a staff member charges a prisoner with committing a prohibited act by issuing an incident report. 28 C.F.R. § 541.5(a). The incident report ordinarily must be issued within 24 hours of the time the staff member became aware of the prisoner's involvement in the incident. *Id*. The incident is then investigated. *Id*. at § 541.5(b).

After the incident is investigated, the UDC reviews the incident report and takes one of the following actions: 1) finds that the prisoner committed the prohibited act charged and/or a similar prohibited act as reflected in the incident report; 2) finds that the prisoner did not commit the prohibited act charged; or 3) refers the incident report to the DHO for further review. *Id*. at § 541.7(a). Prohibited acts are separated into four categories based on severity: Greatest, High, Moderate, and Low. *Id*. at § 541.3(a). If a prisoner is charged with a prohibited act in the Greatest or High category, the UDC automatically refers the incident report to the DHO for further review. *Id*. at § 541.7(a)(4).

Where, as here, a prisoner challenges a disciplinary proceeding that deprived him of good-time credits, "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke [such] credits." *See Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985). In other words, "[t]his standard is met if there was some evidence from which the conclusion of the [disciplinary board] could be deduced[.]" *See id*. (citation and internal quotation marks omitted). Thus, determining "whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *See id*. Rather, "the relevant question is whether there is any

evidence in the record that could support the conclusion reached by the disciplinary board." *See id.* at 455–56 (emphasis added) (citations omitted).

The United States Supreme Court has declined to embrace "a more stringent evidentiary standard as a constitutional requirement." *See id.* at 456. And, in declining to do so, the Supreme Court has explained as follows:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. *See Wolff*, 418 U.S., at 562–563[.] The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, *id.* at 556[,] and neither the amount of evidence necessary to support such a conviction, see *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), nor any other standard greater than some evidence applies in this context.

*See id.*

In applying this governing legal standard here, the court finds that, with respect to most aspects of his disciplinary proceedings, Petitioner has not argued that he was deprived of the protections afforded by the requirements in *Wolff*. But Petitioner did allege that the DHO could not be impartial, and his remaining challenges focus on the DHO's failure to gather and produce exculpatory evidence.

Under United States Supreme Court precedent, "a prisoner's right to produce evidence in his or her defense is limited only by the demands of prisoner safety and institutional order, as determined by the sound discretion of the prison authorities."

*See Young v. Kann*, 926 F.2d 1396, 1400 (3d Cir. 1991).  The discretion that is

afforded to prison officials in this context is "quite broad[:]"

> We should not be too ready to exercise oversight and put aside the
> judgment of prison administrators . . . [W]e must balance the inmate's
> interest in avoiding loss of good time against the needs of the prison,
> and some amount of flexibility and accommodation is required. Prison
> officials must have the necessary discretion to keep the hearing within
> reasonable limits and to refuse to call witnesses that may create a risk
> of reprisal or undermine authority, as well as to limit access to other
> inmates to collect statements or to compile other documentary
> evidence.

*See Young*, 926 F.2d at 1400 (quoting *Wolff*, 418 U.S. at 566).

As explained by the Third Circuit Court of Appeals, however, this discretion

"is not without limits[,]" and the deference owed to prison officials "does not

require . . . that a reviewing court defer to the arbitrary denial of an inmate's

limited right[s]."  *See id*. (alterations in original) (citation and internal quotation

marks omitted); *Burns v. PA Dep't of Corr.*, 642 F.3d 163, 173 (3d Cir. 2011)

(explaining that "[a]lthough prison officials are afforded deference regarding

whether evidence might be unduly hazardous or undermine institutional safety or

correctional goals, 'the discretion afforded prison officials is not without limits' "

(quoting *Kann*, 926 F.2d at 1400)).  As a result, a prisoner "should be allowed to ...

present documentary evidence in his defense when permitting him to do so will not

be unduly hazardous to institutional safety or correctional goals."  *See Wolff*, 418

U.S. at 566.

The court observes that a number of federal courts have held that this limited right to present documentary evidence necessarily extends to a prisoner's limited right to access evidence that is central to his defense, particularly evidence that is potentially exculpatory, provided that disclosure of such evidence would not unduly threaten institutional safety or security. *See, e.g., Kann*, 926 F.2d at 1400–02 (holding that, absent valid security reasons, a prison official's refusal to produce documentary evidence that he relied on in finding a prisoner guilty of disciplinary charges violated the prisoner's due process rights to "present documentary evidence" and "marshal the facts in his defense" (citation and internal quotation marks omitted)); *Melnik v. Dzurenda*, 14 F.4th 981, 985 (9th Cir. 2021) (explaining as follows: "[i]f a prisoner must be allowed to present evidence in his defense, it necessarily follows that he must have some right to prepare for that presentation[;] [w]ith no access to the evidence that will be presented against him, a prisoner could neither build a defense nor develop arguments and evidence to contest the allegations at the disciplinary hearing"); *Lennear v. Wilson*, 937 F.3d 257, 269 (4th Cir. 2019) (stating that "an inmate's due process rights related to ... evidence has at least two dimensions: (A) the qualified right of access to such evidence and (B) the qualified right to compel official review of such evidence"); *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992) (reiterating that "an inmate is also entitled to disclosure of exculpatory evidence, unless that disclosure

would unduly threaten institutional concerns" (citations omitted)); *Smith v. Massachusetts Dep't of Correction*, 936 F.2d 1390, 1401 (1st Cir. 1991) (observing that, "[i]f an inmate has a circumscribed right to present documentary evidence, logic dictates that he must also have some possible means for obtaining it"); *Meis v. Gunter, 906 F.2d 364*, 367 (8th Cir. 1990) (stating that "[inmates] have a right to reasonable access to information necessary to put on a defense, including prison documents ...").

Petitioner states in both of his responses that he requested that exculpatory evidence be entered into the record at the hearing.  (Doc. 9; Doc. 11, p. 3.)  However, the evidence provided by Respondent states that Petitioner "did not provide any mitigating or extenuating evidence or circumstances regarding this incident" at the time of the original investigation.  (Doc. 6-1, p. 10.)  Additionally, the DHO report states that he failed to supply any evidence at the hearing.  (*Id.*, p. 14.)  Therefore, it appears that Petitioner is asserting that the investigator and the DHO simply failed to state in the DHO report that he requested exculpatory evidence to be investigated.  The court notes that when Petitioner was given the Notice of Discipline Hearing Before the DHO form to complete, he was asked if he wanted to "call witnesses at the hearing and to present documentary evidence in your behalf."  (*Id.*, p. 11.)  Nowhere on the form, which was signed by Petitioner,

does there appear any request for the exculpatory evidence he now alleges exists and that he allegedly requested be investigated at the hearing.

This court has historically found that inmates have the opportunity to request the investigation of exculpatory evidence at the time the incident report is served on the inmate and at the time the Notice of Disciplinary Hearing Before the DHO form is completed. *See Vaden v. Bledsoe*, No. 1:11-CV-1807, 2012 WL 3637709 (M.D. Pa. 2012). Here, Petitioner failed to make such a request. Petitioner's failure to make his request at the appropriate time precludes his due process challenge.

Furthermore, the Third Circuit has explicitly found that discovery of contraband in a *hidden area* accessible from a prisoner's cell is sufficient—in the prison setting—to constitute "some evidence" that the prisoner possessed the contraband. *See Denny v. Schultz*, 708 F.3d 140, 147 (3rd Cir. 2013) (holding that discovery of two homemade shanks found in hidden space accessible from petitioner's two-person cell, by itself, constituted "some evidence" that petitioner possessed the weapons in question). As stated above, "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke [such] credits." *See Hill*, 472 U.S. at 455. Therefore, the court finds no due process violations in the disciplinary proceedings.

11

The only one of Petitioner's challenges that speaks to the due process requirements set forth in *Wolff* is the impartiality of the DHO, which Petitioner alleges is undermined by the employment of his wife and daughter at FCI-Allenwood.  The law provides: "[T]he requirement of an impartial tribunal prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary body." *Meyers v. Aldredge*, 492 F.2d 296, 306 (3d Cir. 1974).  Here, nothing indicates such a personal or substantial involvement on the part of the DHO.  There is no allegation that the DHO's wife or daughter were involved with the investigation of Petitioner's misconduct.  Petitioner's argument generally is that the fact that the DHO had family employed at the facility was sufficient to render him incapable of being impartial.  This is insufficient under *Meyers*.

## CONCLUSION

For the above stated reasons, the petition filed pursuant to Section 2241 will be denied and the case will be closed.

An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: July 8, 2024